IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOEL C. KELLEY, # 252047,                    )
                                             )
        Petitioner,                          )
                                             )
    v.                                       )        Civil Action No. 2:13cv522-WHA
                                             )                    (WO)
DEWAYNE ESTES, *et al.*,                     )
                                             )
        Respondents.                         )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court on a *pro se* petition for writ of habeas corpus under 28

U.S.C. § 2254 filed by Alabama inmate Joel C. Kelley ("Kelley").  Doc. No. 1.[1]

## I.   BACKGROUND

On March 6, 2007, a jury in Covington County found Kelley guilty of sexual torture,

in violation of § 13A-6-65.1, Ala. Code 1975; first-degree sodomy, in violation of § 13A-6-

63, Ala. Code 1975; and first-degree assault, in violation of § 13A-6-20, Ala. Code 1975.

On April 10, 2007, the trial court sentenced Kelley to life in prison for the sexual-torture and

sodomy convictions and to 20 years in prison for the assault conviction, the terms to run

consecutively.

Kelley appealed to the Alabama Court of Criminal Appeals, where he asserted claims

that (1) the trial court erred in denying his motion to sever the charges as to the two victims

---

[1] Document numbers ("Doc. No.") are those assigned by the Clerk of Court in this action.
Page references are to those assigned by CM/ECF.

for purposes of trial; (2) the trial court erred in denying his motion in limine to exclude from evidence a flashlight as the possible instrument used to sexually torture one of the victims; and (3) the trial court erred by denying his motion for judgment of acquittal on all counts based on insufficient evidence.  Resp't's Ex. 2.

On January 16, 2009, by unpublished memorandum opinion, the Alabama Court of Criminal Appeals affirmed Kelley's convictions and sentence.  Resp't's Ex. 4.  Kelley applied for rehearing, which the Alabama Court of Criminal Appeals overruled.  Resp't's Exs. 5 & 6.  He then filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on May 8, 2009.  Resp't's Exs. 7 & 8.  A certificate of judgment was entered on the same date.  Resp't's Ex 8.

On January 22, 2010, Kelley filed with the trial court a petition for post-conviction relief under Ala. R. Crim. P. 32, in which he asserted several claims of ineffective assistance of counsel.  Resp't's Ex. 9 vol. 1 - pts. 1-3.  On June 15, 2011, the trial court entered an order denying Kelley's Rule 32 petition.  Resp't's Ex. 9 vol. 1 - pt. 3 at 67-71.

Kelley appealed to the Alabama Court of Criminal Appeals, pursuing his Rule 32 claims that his trial counsel rendered ineffective assistance by failing to (1) move to sever the charges against him in a timely manner; (2) request a jury instruction directing jurors not to consider the evidence from one charge when considering the other charges; and (3) move for a mistrial and a severance based on the State's prosecutorial misconduct in procuring his indictment on a sexual-torture count that was later nol-prossed.  Resp't's Ex. 10.

On April 20, 2012, by unpublished memorandum opinion, the Alabama Court of Criminal Appeals affirmed the trial court's judgment denying Kelley's Rule 32 petition. Resp'ts Ex. 12. Kelley applied for rehearing, which the Alabama Court of Criminal Appeals overruled. Resp'ts Exs. 13 & 14. He then filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on August 10, 2012. Resp'ts Exs. 15 & 16. A certificate of judgment was entered on the same date. Resp'ts Ex. 16.

On September 27, 2012, Kelley filed this petition for writ of habeas corpus under 28 U.S.C. § 2254,[2] asserting the following claims:

1.  His original trial counsel, Larry R. Grissett, rendered ineffective assistance by failing to timely move to sever the charges as to the two victims for purposes of trial.

2.  His second trial counsel, Alfred F. Livaudais, Jr., rendered ineffective assistance by failing to move for a severance immediately after entering the case.

3.  Livaudais and David J. Harrison (Kelley's third trial counsel) rendered ineffective assistance by failing to request a jury instruction that the evidence from one count could not be used to determine guilt on the remaining counts.

4.  Livaudais and Harrison rendered ineffective assistance of counsel by failing to move for a mistrial and/or renew the motion for severance on the ground that the State engaged in prosecutorial misconduct by causing the grand jury to indict Kelley on a sexual-torture count that was later nol-prossed.

5.  The State's evidence did not support the jury's verdicts.

---

[2] Kelley originally filed this petition in the United States District Court for the Northern District of Alabama. In an order entered in July 2013, that court transferred Kelley's petition to this court. Doc. No. 7.

6.      The trial court violated his rights under the Fifth, Sixth, and Fourteenth Amendments by admitting into evidence a flashlight alleged to have been used to sexually torture one of the victims.

7.      He is "actually innocent" of the crimes of which he was convicted.

Doc. No. 1 at 20-39; Doc. No. 2 at 24-49.

The respondents argue that Kelley's claims of ineffective assistance of counsel were correctly adjudicated on the merits by the state courts. Doc. No. 15 at 45-58. They further argue that his claims regarding the sufficiency of the State's evidence and the admission of evidence are procedurally defaulted because they were not exhausted in the state courts and a state-court remedy is no longer available. *Id*. at 44-45. Finally, they argue that his claim of actual innocence is meritless. *Id*. at 41-43.

After review of the parties' submissions, the record, and the pertinent law, the undersigned finds that Kelley is not entitled to habeas relief and that his § 2254 petition should be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.   DISCUSSION

### A.   Claims Adjudicated on Merits

"When it enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress significantly limited the circumstances under which a habeas petitioner may obtain relief." *Hardy v. Allen*, 2010 WL 9447204, at *7 (N.D. Ala. Sep. 21, 2010). To prevail on a § 2254 claim adjudicated on the merits by the state courts, a

petitioner must show that a decision by the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 404-05 & 412-13 (2000).

A state court's decision is "contrary to" federal law either if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result.  *Williams*, 529 U.S. at 404-06; *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court's decision is an "unreasonable application" of federal law if it either correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams*, 529 U.S. at 407. "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Williams*, 529 U.S. at 411; *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003).  The reviewing court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, ___, 131 S. Ct. 770, 786 (2011). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398 (2011) (internal citations omitted).

Federal courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance

> prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (internal quotation marks omitted).  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

Here, where the state court ruled on the merits of Kelley's ineffective-assistance-of-counsel claims, this court's § 2254 review under *Strickland* is another step removed from the original analysis, or as the Supreme Court puts it, "doubly deferential."  *Burt v. Titlow*, ___ U.S. ___, ___, 134 S. Ct. 10, 13 (2013) (quotation marks and citation omitted); *see Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 652 (11th Cir. 2014) (quoting *Burt*, 134 S. Ct. at 10).

### 1.   *Grissett's Failure to Timely Move for Severance*

Kelley contends that his original trial counsel, Larry R. Grissett, rendered ineffective assistance by failing to timely move to sever the charges as to the two victims for purposes of trial.  Doc. No. 1 at 30-31; Doc. No. 2 at 37-47.

Kelley was tried for the sexual torture and first-degree assault of E.P. and the first-

degree sodomy of B.B.  The incidents involving both victims occurred at E.P.'s Andalusia residence, approximately two years apart, in August 2001 and August 2003.[3]  The State alleged that Kelley's motivation for attacking E.P. was his anger over her breaking off a long-term extramarital relationship with him.[4]  On the night of August 30, 2001 (several months after the breakup), Kelley came to E.P.'s residence, uninvited, and began watching television.  E.P., who had taken some "muscle relaxers and sleeping pills," told Kelley she was going to bed, asked him to turn off the television when he left, and retired to her bedroom.  Although she later heard the television turn off, she did not hear Kelley leave.  Later that evening, as she was walking to the bathroom, E.P. was struck on the side of her head.  She did not see the person who struck her.  Following the blow to her head, E.P. could remember nothing that occurred until she woke up the following morning on the bathroom floor, bleeding profusely from her vagina and rectum.  The evidence indicated that E.P. had been brutalized with an inanimate object, possibly a large flashlight later found in her residence.  The injuries to her vaginal and rectal area required lengthy hospitalization, reconstructive surgery, and a temporary colostomy procedure

The incident involving B.B. also took place at E.P.'s residence.  B.B. was a casual friend of E.P.'s who assisted her with household chores and yard work during the summer

---

[3] The facts set forth in this discussion for the most part paraphrase the relevant facts set forth by the Alabama Court of Criminal Appeals in its memorandum opinion on direct appeal.  *See* Resp'ts Ex. 4 at 2-28.

[4] E.P. was unmarried.  Kelley was married to someone else for the duration of their affair.

8

of 2003.  She recalled being at E.P.'s residence on August 26, 2003, to talk to E.P. about plans to do yard work the following day.  While B.B. was talking to E.P., Kelley arrived at the residence, uninvited, and made vulgar comments to E.P.  B.B. testified that E.P. asked her not to leave while Kelley was there because she feared him.  The following morning, B.B. arrived at E.P.'s residence.  After speaking briefly with E.P., who left for a doctor's appointment at around 10:00 a.m, B.B., who acknowledged that she is an alcoholic, drank some vodka and began to mow the yard.  Later, she took a break, sat down on a glider swing on the deck of the residence, and drank more vodka.  According to B.B., the next thing she could recall was being inside E.P.'s residence with Kelley, "his penis in [her] mouth."  She could not recall how she entered the residence.  Although B.B. stated that she attempted to get away, she said that Kelley maintained a hold on her head and her ears, and that she could not pull away or breathe.  B.B. also could not recall how the encounter with Kelley ended or the facts surrounding Kelley's departure, stating only that she knew that E.P. came and found her after the incident.  B.B. noted that, when discovered by E.P., she was gagging, and that E.P. retrieved a tray for her to cough onto and that E.P. also called for emergency assistance.  Testimony indicated that Kelley initially denied to investigators that he had any sexual contact with B.B.  DNA analysis revealed that semen samples matching Kelley's DNA profile were recovered from the tray B.B. had coughed onto and from a leaf found near the scene.  At trial, Kelley maintained the incident with B.B. was consensual and that B.B. voluntarily performed oral sex on him.

On direct appeal, Kelley argued that the trial court erred in denying his motion to sever the separate charges pertaining to E.P. and B.B. for purposes of trial because the offenses were dissimilar, were committed against different individuals, and occurred approximately two years apart.  *See* Resp't's Ex. 2.  The Alabama Court of Criminal Appeals held that because Kelley's trial counsel had waited until eight months after Kelley's arraignment to move for a severance – well outside the seven-day period provided in Ala. R. Crim. P. 13.4(b) – the request for severance was untimely.  Resp't's Ex. 4 at 28.

In his Rule 32 petition filed with the trial court, Kelley argued that his first trial counsel, Grissett, rendered ineffective assistance by failing to timely move to sever the charges for purposes of trial.  In its order denying relief on this claim, the trial court found:

The defendant says:

> "Petitioner was denied assistance of trial counsel, in violation of his Sixth Amendment Rights, when his first trial counsel, Attorney Larry R. Grissett, failed to file a timely motion to sever the separate counts [of the indictment] for purposes of trial, pursuant to Rule 13.3(a) and Rule 13.4(a)(b), A.R.Crim.P., within the required seven (7) days of waiving arraignment and entering a plea of not guilty; and this deficient performance caused petitioner to be unfairly prejudiced and rendered his trial fundamentally unfair in violation of his Due Process guarantees under the Fourteenth Amendment.  This failure to file a timely motion to sever also failed to preserve the issue of severance for direct appeal."

To the contrary, the Court notes that the defendant has suffered no improper prejudice from a lack of severance of counts in this case.  This is true because the various counts in the matter were properly joined for trial.  That assertion follows because evidence of defendant's crimes against [B.B.] was admissible to help prove the crimes against [E.P.]

The identity of [E.P.]'s assailant was in issue at trial. [E.P.] did not see the face of the individual that caused her harm. Therefore, proof of the conduct of defendant in attacking [B.B.] was relevant in the trial of [E.P.]'s assailant to help show whom that assailant actually was. Such conclusion is based on the fact that the defendant exhibited similar conduct toward each woman of such a nature as to identify him and, also, to show a common plan or mode of operation on his part. As the state has said:

> "The relationship and similarity between Kelley's attacks on E.P. and B.B., regardless of the length of time between them, resulted in them being correctly tried together. Each of the incidents occurred at E.P.'s home after Kelley appeared there uninvited. Although normally docile and submissive, E.P. defied Kelley before each attack. Both she and B.B. had ingested medication or alcohol before each incident, and were alone when attacked from behind; in each attack these victims were unconscious or otherwise unable to defend themselves before the sexual portions of the attacks began."

In essence, the cases had to be tried together, and, because of that fact, the Court never thought they should be severed. Therefore, a motion to sever, whenever it might have been filed, would have been fruitless. Truly, the defendant can show no prejudice. *See, also, Gooch vs. State*, 717 So. 2d 50, 56 (Ala.Crim.App. 1997).

Resp's Ex. 9 vol .1 - pt. 3 at 68-69.

In affirming the trial court, the Alabama Court of Criminal Appeals set forth the trial court's findings verbatim, noted that the findings were supported by the record, and further noted that the trial court's findings were entitled to deference because the same judge presided over both the trial and the Rule 32 proceedings. Resp's Ex. 12 at 3-4, 8.

Rule 13.3 of the Alabama Rules of Criminal Procedure provides for the consolidation of two or more offenses if they are of the same or similar character, are based on the same conduct, or are part of a common scheme or plan. Ala. R. Crim. P. 13.3(a). Kelley would

11

not automatically have been entitled to a severance even if Grissett had timely moved to sever the charges as to E.P. and B.B. for purposes of trial. Whether to grant severance is left to the discretion of the trial court. *See* Ala. R. Crim. P. 13.4 (the trial court may order separate trials for the offenses "[i]f it appears that a defendant . . . will be prejudiced by a joinder of offenses . . . or by such joinder for trial together"); *James v. State*, 681 So. 2d 269, 271 (Ala. Crim. App. 1996) (citation omitted) ("The granting of a severance rests within the discretion of the trial court . . . ."); *see also Bogan v. Thompson*, 365 F. App'x 155, 158 (11th Cir. 2010). Here, the offenses consolidated were similar in that each of the incidents occurred at E.P.'s residence in the same or similar manner; each occurred after Kelley appeared at the residence uninvited, when each victim was alone and had ingested medication or alcohol; and each victim was attacked by surprise and was unconscious or otherwise unable to defend herself before the sexual portion of the attack. Kelley has not shown that consolidation was improper based on the facts of the attacks on the two victims. Consequently, he fails to show that Grissett performed deficiently in failing to timely move for a severance or that he was prejudiced by Grissett's allegedly deficient performance in this regard. *Strickland*, 466 U.S. at 692-94.

The state court's determination that Grissett did not render ineffective assistance of counsel related to the severance of the charges involved a reasonable determination of the facts in light of the evidence presented and was neither contrary to nor an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1) & (2). Therefore,

Kelley is not entitled to habeas relief based on the claim.

### 2. Livaudais's Failure to Move for Severance after Entering Case

Kelley next claims that his second trial counsel, Alfred F. Livaudais, Jr., who filed a notice of appearance on March 21, 2006, rendered ineffective assistance by failing to immediately move for a severance after he entered the case and instead waiting until September 11, 2006, to move to sever the charges as to E.P. and B.B. for purposes of trial. Doc. No. 1 at 32; Doc. No. 2 at 47-48.

Kelley presented this claim in his Rule 32 petition, which the trial court denied on the same grounds that it denied Kelley's ineffective-assistance claim regarding his original counsel, Grissett, i.e., that Kelley was not prejudiced by the untimeliness of any motion for severance filed by his counsel because the offenses against E.P. and B.B. were properly consolidated for trial and a motion to sever, whenever it might have been filed, would have been fruitless. Resp'ts Ex. 9 vol. 1 - pt. 3 at 69-70. In affirming the trial court, the Alabama Court of Criminal Appeals noted that the trial court's findings were supported by record and entitled to deference. Resp'ts Ex. 12 at 4-6, 8.

Because Kelley has not shown that consolidation of the charges was improper, he fails to show that Livaudais performed deficiently in failing to immediately move for a severance after he entered the case; likewise, he fails to show he was prejudiced by Livaudais's allegedly deficient performance. *Strickland*, 466 U.S. at 692-94. The state court's determination that Livaudais did not render ineffective assistance of counsel

involved a reasonable determination of the facts in light of the evidence presented and was

neither contrary to nor an unreasonable application of clearly established federal law.  28

U.S.C. § 2254(d)(1) & (2).  Kelley is not entitled to relief based on the claim.

### 3.     Counsel's Failure to Request Jury Instruction

Kelley contends that Livaudais and his third trial counsel, David J. Harrison, rendered

ineffective assistance by failing to request a jury instruction that the evidence from one count

could not be used to determine his guilt on the remaining counts.  Doc. No. 1 at 38; Doc. No.

2 at 48.

Kelley presented this claim in his Rule 32 petition.  In denying relief, the trial court

found:

The defendant says:

> "Petitioner was denied effective assistance of trial counsel, in
> violation of his Sixth Amendment Rights, when his second trial
> counsel, Attorney Alfred F. Livaudais, Jr., and his third trial
> counsel, Attorney David J. Harrison, failed to request an oral
> charge to the jury that *they were not to use or consider evidence
> from one count being tried to determine Petitioner's guilt on
> any of the other two counts being tried*; and for failing to object
> to the trial court's failure to give this charge on its own to the
> jury.  These failures by trial counsel to request this charge and
> to object to the trial court failing to give this charge on its own,
> unfairly prejudiced Petitioner and rendered his trial
> fundamentally unfair in violation of his Due Process rights
> under the Fourteenth Amendment."

> To the contrary, the Court notes that counsel may not be faulted for
> failing to request that the court charge the jury that "*they were not to use or
> consider evidence from one count being tried to determine Petitioner's guilt
> on any of the other two counts being tried*" because, in the context of this

14

case, the proposed charge is inaccurate and wrong.  As explained above, the evidence of defendant's crimes against [B.B.] was admissible to help prove the crimes against [E.P.]   Defendant's proposed charge would have impermissibly prevented the jury from so employing it.

Furthermore, in this case, even if the charge had been given, it would not seem to be of a nature so as to affect the outcome of the jury's deliberations, and, therefore, could not have prejudiced the defendant.  *See, Russo vs. State*, 630 So. 2d 142, 144 (Ala.Crim.App. 1993).

Resp'ts Ex. 9 vol. 1 - pt. 3 at 70 (emphasis in original).  In affirming the trial court, the Alabama Court of Criminal Appeals noted that the trial court's findings were supported by record and entitled to deference.  Resp'ts Ex. 12 at 6-8.

The proposed jury instruction was *not* an accurate statement of the law because, as the trial court found, the evidence regarding Kelley's acts against B.B. was admissible to help prove his commission of the acts against E.P.  Thus, Kelley's attorneys were not ineffective for failing to request the jury instruction.  Counsel cannot be ineffective for failing to raise a meritless issue.  *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).  The state court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established federal law, *see* 28 U.S.C. § 2254(d)(1), when it concluded that trial counsel was not ineffective because the jury instruction was "inaccurate and wrong."  Consequently, Kelley is not entitled to habeas corpus relief on this claim.

### 4.    *Counsel's Failure to Move for Mistrial and/or Renew Motion for Severance*

Kelley also contends that Livaudais and Harrison rendered ineffective assistance of

counsel by failing to move for a mistrial and/or renew the motion for severance on the

ground that the State engaged in prosecutorial misconduct by causing the grand jury to indict

him on a sexual-torture count as to B.B. that was later nol-prossed.  Doc. No. 1 at 39; Doc.

No. 2 at 48-49.

Kelley presented this claim in his Rule 32 petition.  In denying relief, the trial court

found:

The defendant says:

> "Petitioner was denied effective assistance of trial counsel, in
> violation of his Sixth Amendment Rights, when his second trial
> counsel, Attorney Alfred F. Livaudais, Jr., and his third trial
> counsel, Attorney David J. Harrison, failed to make a motion
> for a mistrial and a renewed motion for severance, when the
> State rested its case, on the grounds of prosecutorial misconduct
> due to the State causing the Grand Jury to return a Count IV to
> the indictment against Kelley for the charge of Sexual Torture
> of [B.B.], when there was absolutely no evidence of such a
> crime, for the sole purpose of illegally "creating" a link between
> the two alleged victims [E.P. and B.B.] (Count I of the
> indictment was Sexual Torture of [E.P.]) to create the illusion
> that there were common factors – a link – between the crimes
> committed against two separate individuals that would defeat
> any attempt or motion for severance of the charges into separate
> trials and would enable the jury to consider the evidence from
> the [B.B.] Counts when considering the [E.P.] counts where
> there was little or no evidence."

To the contrary, the Court notes that (A) Defendant speculates that
there was prosecutorial misconduct without averring specific facts to show
that the prosecutor actually acted improperly; (B) Count IV of the indictment
could not prejudice the defendant as the jury did not have any means to act on
it; (C) Severance was not appropriate *with or without* Count IV; and (D) There
would have been no severance whether or not Count IV was in the case, so,
even if there had been prosecutorial misconduct involved, in the context of

16

this particular criminal prosecution, it could not have prejudiced the defendant.

Resp'ts Ex. 9 vol. 1 - pt. 3 at 70-71 (emphasis in original).  In affirming the trial court, the Alabama Court of Criminal Appeals noted that the trial court's findings were supported by the record and entitled to deference.  Resp'ts Ex. 12 at 7-8.

The state court's determination that trial counsel was not ineffective involved a reasonable determination of the facts in light of the evidence presented and was neither contrary to nor an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(1) & (2).  Kelley wholly fails to demonstrate prosecutorial misconduct regarding the sexual-torture count as to B.B. that was ultimately nol-prossed, and he fails to show that a severance of the charges for trial would have been granted had the indictment not originally included the sexual-torture count as to B.B.  He therefore fails to show that his trial counsel performed deficiently here or that he was prejudiced by his counsel's allegedly deficient performance.  *Strickland*, 466 U.S. at 692-94.  Consequently, he is not entitled to habeas corpus relief based on this claim.

## B.    Procedurally Defaulted Claims

The respondents contend that Kelley is procedurally defaulted on his claims that (1) the State's evidence did not support the jury's verdicts and (2) the trial court violated his rights under the Fifth, Sixth, and Fourteenth Amendments by admitting into evidence a flashlight alleged to have been used to sexually torture E.P.  *See* Doc. No. 1 at 24-29; Doc. No. 2 at 28-36.  Specifically, the respondents argue that Kelley failed to exhaust these claims

17

because he did not present them as constitutional claims in his application for rehearing after the Alabama Court of Criminal Appeals affirmed his convictions on direct appeal and then did not pursue the claims in the petition for writ of certiorari he subsequently filed with the Alabama Supreme Court.  Doc. No. 15 at 44-45.

The procedural-default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003).

The record supports the respondents contention that Kelley failed to exhaust the two above-mentioned claims.[5]  Claims not exhausted properly in the state courts are procedurally

---

[5] With particular regard to Kelley's claim that the trial court violated his rights by admitting into evidence a flashlight alleged to have been used to sexually torture E.P., this court notes that, "[a]s a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir. 1994), since the state court "has wide discretion in determining whether to admit evidence at trial." *Lynd v. Terry*, 470 F.3d 1308, 1314 (11th Cir. 2006); *see also Baxter v. Thomas*, 45 F.3d 1501, 1509 (11th Cir. 1995) (evidentiary ruling claims reviewed only to determine whether the alleged error "was of such magnitude as to deny fundamental fairness").  Where the petitioner claims that the state court's evidentiary ruling deprived him of due process, the habeas court asks only whether the error was of such magnitude as to deny the petitioner his right to a fair trial, i.e., whether the error "was material as regards a critical, highly significant factor." *Alderman*, 22 F.3d at 1555; *see also Kight v. Singletary*, 50 F.3d 1539, 1546 (11th Cir. 1995). Claims in this regard will not support federal habeas relief unless the asserted error "had
(continued...)

defaulted if presentation of the claims in state court would be barred by state procedural rules. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Here, as the respondents correctly assert, no state remedy remains by which Kelley may now present his unexhausted claims, because any attempt to exhaust the claims in state court would be barred by applicable state procedural rules. *See* Doc. No. 15 at 44-45. It is too late for Kelley to file another application for rehearing and petition for writ of certiorari presenting these claims to the Alabama Court of Criminal Appeals and the Alabama Supreme Court, and a Rule 32 petition asserting the claims would be barred as both successive and untimely. *See* Ala. R. App. P. 39(c)(2) & 40(c); Ala. R. Crim. P. 32.2(b) & 32.2(c).[6]

<u>Exceptions for Procedurally Defaulted Claims</u>

This court may reach the merits of a procedurally defaulted claim only in two narrow circumstances:

> First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); [*Wainwright v.*] *Sykes*, 433 U.S. [72,] 87 [(1977)]. . . . Second, a federal

---

[5](...continued)
substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quotation omitted). Even if Kelley had properly exhausted his claim about the admission of the flashlight in evidence at trial, this court cannot say that he was denied a fundamentally fair trial because of the admission of this evidence. *Alderman*, 22 F.3d at 1555.

[6] Moreover, the claims would be procedurally barred in a Rule 32 proceeding as claims that were raised at trial and on appeal. *See* Ala. R. Crim. P. 32.2(a)(2) & (4).

> court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id.*

*Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

### Cause and Prejudice

"[C]ause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" or that the procedural default resulted from ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice in this context, a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see also Murray*, 477 U.S. at 494 (1986).

Kelley does not try to demonstrate cause for his failure to present his unexhausted claims to the state courts in compliance with applicable procedural rules. Consequently, he may not obtain review of his defaulted claims on this basis.

### Actual Innocence

Kelley contends that he is actually innocent of the crimes of which he was convicted. Doc. No. 1 at 20-23; Doc. No. 2 at 24-28. Demonstrated actual innocence may trump a

procedural bar in a habeas proceeding to provide a gateway to federal review of an otherwise defaulted § 2254 claim.  *See Murray*, 477 U.S. at 495-96; *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).

In *Schlup v. Delo*, 513 U.S. 298 (1995), the United States Supreme Court held that prisoners asserting actual innocence as a gateway to review of defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt."  513 U.S. at 327. "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006).  A petitioner must show "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

As the Supreme Court in *Schlup* observed:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . .  To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

Here, Kelley points to no new reliable evidence, as required by *Schlup*, to support his claim that he is actually innocent of the crimes of which he was convicted.  Instead, he submits a self-serving affidavit containing his own unsupported speculation on why the

21

victims reported his offenses.  *See* Doc. No. 1 at 36-39.  Elsewhere, he merely reargues the sufficiency of and/or the weight afforded the evidence.  Such argument will not sustain a claim of actual innocence.  *Bousley*, 523 U.S. at 623-24; *see, e.g.*, *Rutledge v. Neilsen*, 2012 WL 3778987, at *7 (M.D. Ala. Jul. 30, 2012) (allegations of prosecution's failure to prove essential elements of offense go to sufficiency of and/or weight afforded the evidence presented and do not constitute "new reliable evidence" going to petitioner's actual innocence); *Brown v. Dretke*, 2003 WL 22251389, at *1-2 (N.D. Tex. Sep. 30, 2003) (holding petitioner's burden of establishing actual innocence to excuse procedural default had not been met despite allegations of a fatal variance between the indictment and the evidence).

Consequently, Kelley's assertion of actual innocence provides no gateway for review of his procedurally defaulted claims, and the claims are foreclosed from federal habeas review.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and that this case be DISMISSED with prejudice.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **October 27, 2015**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made;

frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 13th day of October, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE